UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GABRIEL C. WILSON, *o/b/o G.A.H.*,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00060 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Gabriel C. Wilson ("Plaintiff") brings this action on behalf of G.A.H., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

On June 10, 2013, Plaintiff protectively filed an application for SSI on behalf of G.A.H., a child under the age of 18. (Dkt. 7 at 20, 113).[1] Plaintiff alleged G.A.H.'s disability began on April 7, 2013, due to seizure disorder, shaken baby syndrome, and brain injury. (*Id.* at 20, 114). Plaintiff's application was initially denied on December 4, 2013. (*Id.* at 20). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on January 28, 2016. (*Id.* at 20, 99-112). On September 28, 2016, the ALJ issued an unfavorable decision. (*Id.* at 17-38). Plaintiff requested Appeals Council review; her request was denied on November 14, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-9). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or

combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether G.A.H. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that G.A.H. was born on February 14, 2013, and therefore was a newborn/young infant on June 10, 2013, the date the application was filed. (Dkt. 7 at 23). At step one, the ALJ determined that G.A.H. had not engaged in substantial gainful activity since June 10, 2013, the application date. (*Id.*).

- 4 -

At step two, the ALJ found that G.A.H. suffered from the severe impairment of speech delay. (*Id.*). The ALJ further found that G.A.H.'s medically determinable impairment of traumatic brain injury with seizure activity was non-severe. (*Id.* at 23).

At step three, the ALJ found that G.A.H. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 26). Similarly, the ALJ found that G.A.H. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.*). In making this determination, the ALJ considered G.A.H.'s functioning in each of the above-mentioned six domains and concluded that G.A.H. had no limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself, and less than a marked limitation in moving about and manipulating objects and in health and physical well-being. (*Id.* at 32-38). Accordingly, the ALJ found that G.A.H. was not disabled as defined in the Act. (*Id.* at 38).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ failed to weigh opinion evidence; (2) the ALJ failed to properly develop the record; and (3) the ALJ erred at step two of the sequential analysis, because he failed to adequately consider whether G.A.H.'s traumatic brain injury, seizure disorder, and shaken baby

syndrome were severe. (Dkt. 9-1 at 1). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A. **Weighing of Opinion Evidence**

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 U.S. Dist. LEXIS 35143, at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). The failure to assign a specific weight to an opinion may be harmless error, particularly where the ALJ engages in a detailed discussion of the evidence and the ALJ's conclusion is consistent with the opinion. *See Buscemi v. Colvin*, No.13-CV-6088P, 2014 U.S. Dist. LEXIS 134827, at *34-35 (W.D.N.Y. Sept. 24, 2014).

The record does not contain an opinion from a treating physician, but it does include opinions from other sources. Plaintiff contends that the ALJ failed to weigh and explain how he relied on the following opinion evidence: an August 25, 2015 evaluation submitted

by Elizabeth Mobley, a speech language pathologist, and Tara Caldwell, a special education teacher (Dkt. 7 at 496-501); a February 22, 2016 evaluation submitted by Carrie Hughes, a licensed speech-language pathologist (*id.* at 486-91); and an August 1, 2013 evaluation submitted by Marie Ticen, a physical therapist, and Kimberly Lipinski, an occupational therapist (*id.* at 329-32). (*See* Dkt. 9-1 at 12).

The ALJ discussed and considered each of the above-mentioned evaluations in the written determination. (*See* Dkt. 7 at 24-25 (discussing August 1, 2013 evaluation); *id.* at 28 (discussing August 25, 2015 developmental assessment); *id.* at 30 (discussing February 22, 2016 consultative examination)). The Court notes that these evaluations were not administered by acceptable medical sources, but represent an assessment of whether G.A.H., based on her age, was on-track or delayed in various areas of development.

While the ALJ did not specifically state what weight (*i.e.*, controlling, significant, some, or little weight) he accorded each of these evaluations, it is clear from the written determination that the evaluations significantly informed the step three determination. For example, the August 2015 developmental assessment resulted in the following findings:

> [G.A.H.'s] gross motor, fine motor, social/emotional, receptive language, and adaptive skills are developing within normal limits for her age. Her cognitive skills were found to be mildly delayed. A significant delay was assessed in the area of communication based on an in-depth assessment. Expressive language [was] found to be 2 standard deviations below the mean . . . at this time. [G.A.H.'s] pragmatic language abilities appeared to be developing commensurately with her expressive language skills.

(*Id.* at 501). Similarly, the February 2016 speech evaluation showed that G.A.H.'s "overall language skills [were] within normal limits when compared to age-matched peers." (*Id.* at 487). G.A.H.'s receptive language skills, expressive language skills, pragmatics, voice,

fluency, oral-motor examination, and hearing were normal. (*Id.* at 487-89). For comprehension and production of the spoken language, G.A.H.'s skills were within normal limits for her age/grade level. (*Id.* at 490). G.A.H. had a "moderate delay" for speech production, "[b]ased on formal and informal assessment, age, decreased intelligibility factors, poor stimulability, the presence of phonological processes that are no longer judged to be age-appropriate, and a lack of self-monitoring skills." (*Id.* at 488-90).

The ALJ specifically referenced these evaluations as supporting his conclusion that G.A.H. had no limitation in acquiring and using information (*id.* at 33), attending and completing tasks (*id.* at 34), interacting and relating with others (*id.* at 35), and caring for herself (*id.* at 37). The ALJ also referenced the 2015 evaluation in concluding that G.A.H. had less than a marked limitation in moving about and manipulating objects. (*See id.* at 36). Consistent with the step three determination, the 2015 and 2016 evaluations revealed mostly normal functioning, with delays in a few areas for speech.

As to the ALJ's weighing of the August 2013 evaluation, while that evaluation revealed a thirty-three percent delay in G.A.H.'s gross motor skills[2] (*id.* at 332), as noted by the ALJ in the written determination, between September 2013 and January 2014, G.A.H. underwent physical therapy with progress. (*Id.* at 26). In the months following, G.A.H. was seen by various medical providers and there were no major concerns expressed regarding her gross motor skills. Rather, G.A.H. was able to "stoop and recover" and "walk well." (*Id.*). The ALJ carefully considered the 2013, 2015, and 2016 evaluations, and it is

---

2    In August 2013, G.A.H.'s fine motor, adaptive, communication, cognitive, and social-emotional skills were within normal limits for her age. (*See* Dkt. 7 at 332).

- 8 -

clear from the written determination that the results of these evaluations informed the step three findings. Accordingly, any error created by the ALJ's failure to assign specific weights to the 2013, 2015, and 2016 evaluations is harmless. *See Buscemi*, 2014 U.S. Dist. LEXIS 134827, at *32-35 (where ALJ engaged in a "detailed discussion" of opinion evidence, and that evidence was "generally consistent" with ALJ's conclusions, "any failure to assign a specific weight . . . was . . . harmless and [did] not require remand."); *see also Pease v. Astrue*, No. 5:06-CV-0264 (NAM/DEP), 2008 U.S. Dist. LEXIS 87269, at *21-22 (N.D.N.Y. Sept. 17, 2008) (ALJ made his findings by citing to medical opinion evidence throughout the decision; "the mere fact that the ALJ did not specifically state the weight afforded to [the medical opinion] does not mean that the opinion was not properly considered.").

Plaintiff contends that the ALJ failed to consider G.A.H.'s delays in expressive language, which were relevant to the domains of acquiring and using information and interacting and relating with others. (Dkt. 9-1 at 13-14). Plaintiff further contends that the ALJ ignored evidence of G.A.H.'s limitations in gross motor movement. (*Id.* at 14). Contrary to Plaintiff's claims, the ALJ specifically discussed the above-mentioned limitations in the written determination. (*See* Dkt. 7 at 25 (for the August 2013 evaluation, "[i]t was noted that the claimant demonstrated a 33 percent [delay] in her gross motor skills."); *id.* at 30 (for the August 2015 evaluation, "[h]er cognitive skills were found to be mildly delayed and a significant delay was assessed in the area of communication based on an in-depth assessment. Expressive language [was] found to be two standard deviations below the mean and at that time the claimant's pragmatic language abilities appeared to be

developing commensurately with her expressive language skills and the claimant was deemed eligible for the Early Intervention Program."); *id.* at 31 (for the February 2016 evaluation, "[b]ased on formal and informal assessment, age, decreased intelligibility factors, poor stimulability, the presence of phonological processes that were no longer judged to be age appropriate, and a lack of self-monitoring skills, a moderate articulation/phonological disorder was felt to exist.")). In other words, the ALJ thoroughly and accurately summarized the assessment results, including those demonstrating that G.A.H. had limitations.

Despite these limitations, the ALJ properly found that G.A.H. had no or less than marked limitations in each of the six domains. Specifically, the ALJ explained that for moving about and manipulating objects, G.A.H.'s motor skills improved with physical therapy and were within the normal range by the August 2015 evaluation. (*Id.* at 36; *see also id.* at 501 ("The results of this assessment indicated that [G.A.H.'s] gross motor, fine motor, social/emotional, receptive language, and adaptive skills are developing within normal limits for her age.")). With regard to G.A.H.'s speech limitations, the written determination is clear that G.A.H.'s limitations did not meet the threshold for a marked or extreme limitation in the areas of acquiring and using information and interacting and relating with others. (*Id.* at 32-33, 34-35). While the evaluations revealed that G.A.H. had an expressive language delay[3] and a moderate speech production delay, Plaintiff does not

---

[3]  At the time of the February 2016 evaluation, G.A.H.'s expressive language skills had improved, and she was "within normal limits." (Dkt. 7 at 488). This is consistent with the statement in the August 2015 evaluation that G.A.H.'s expressive language abilities would likely improve. (*Id.* at 499).

explain how these delays equate to a finding of a marked or extreme limitation for the domains of acquiring and using information or interacting and relating with others. Conversely, the ALJ offered a thorough, well-reasoned explanation as to why G.A.H. did not have a marked or extreme limitation in either of these domains. (*See* Dkt. 7 at 32-38). Remand is not required on this basis.

### B. Failure to Develop the Record

Plaintiff next contends that the ALJ failed to develop the record. Specifically, Plaintiff contends that the ALJ should have secured medical opinion evidence before concluding that G.A.H.'s traumatic brain injury, seizure disorder, and shaken baby syndrome did not qualify as severe impairments.[4] (Dkt. 9-1 at 15). Plaintiff contends that because the ALJ did not secure a medical opinion, the ALJ relied on "raw medical evidence" in arriving at his conclusion. (*Id.*).

"[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotations and citation omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no

---

[4] Plaintiff contends that the ALJ "made no explicit finding" that G.A.H. had any non-severe impairments. (Dkt. 9-1 at 15). Plaintiff's statement is belied by the record. Under the section addressing G.A.H.'s impairments, the written determination states "[t]here is objective evidence in the medical record of an impairment that is non-severe in that such impairment establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to function. Specifically, the claimant has been evaluated and treated for a traumatic brain injury with seizure activity." (*See* Dkt. 7 at 23).

obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotations and citation omitted).

At step two of the sequential analysis, the ALJ explained how he arrived at the determination that G.A.H.'s traumatic brain injury with seizures was non-severe. (*See* Dkt. 7 at 23-26). In doing so, the ALJ did not interpret raw medical data. Rather, the ALJ referred to the extensive medical record in the case (*see id.* at 26 ("The undersigned has read and considered the clinical notes from these visits.")) and explained that while G.A.H. initially experienced seizures in June to July 2013 immediately following her onset date, by September 2013 G.A.H.'s mother had decreased her dose of Keppra.[5] (*Id.* at 25). Further, a neurological examination and an EEG were normal. (*Id.*; *see also id.* at 350-51). As explained by the ALJ, in September 2013, "it appeared the claimant's seizures were well controlled at that time and her mother was instructed to continue Keppra." (*Id.*). Physical examinations in September and October 2013 were unremarkable and there were no new or significant developments for G.A.H.'s traumatic brain injury or seizure disorder. (*Id.* at 25-26; *see, e.g., id.* at 392, 395, 397). The ALJ also discussed the results of G.A.H.'s August 2013 early intervention core evaluation, which revealed some delay in gross motor skills but no concerns in the area of cognitive or social skills. (*Id.* at 24-25). In other words, in arriving at the conclusion that G.A.H.'s traumatic brain injury with seizure

---

[5] Plaintiff contends that G.A.H.'s last seizure occurred during the summer of 2014. (Dkt. 9-1 at 15). At the administrative hearing, Plaintiff testified that G.A.H.'s last seizure was "probably [in] . . . summer of 2014." (Dkt. 7 at 110). There is no medical record for Plaintiff's visit for the summer 2014 seizure, and therefore it is not discussed in the written determination. Regardless of whether the summer 2014 seizure occurred, as explained above, G.A.H.'s seizures did not rise to the level of a severe impairment because they were well-controlled by medication, and any frequent seizure activity had ceased by July 2013.

disorder was a non-severe impairment, the ALJ used his common sense and relied on a plain reading of medical reports, which revealed decreasing seizure activity and normal physical examinations. *See* 20 C.F.R. § 416.924(c) (for an impairment to qualify as severe, the impairment must cause more than minimal functional limitations); *see also Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016) ("[T]he mere presence of a disease or impairment, or establishing a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe.") (internal quotation omitted). This was proper, and remand is not required on this basis.

## C. **The Step Two Determination**

Plaintiff's third and final argument is related to her second argument. Specifically, Plaintiff contends that the ALJ did not "adequately reference" G.A.H.'s diagnosis of epilepsy/seizure disorder. (Dkt. 9-1 at 16). Specifically, Plaintiff contends that the ALJ erroneously referred to G.A.H.'s diagnoses as "traumatic brain injury with seizure activity." (*Id.*).

Plaintiff's argument that the ALJ failed to recognize G.A.H.'s epilepsy/seizure disorder is meritless. As noted above, the ALJ specifically recognized and discussed, at length, that G.A.H. suffered from traumatic brain injury and seizures. (*See* Dkt. 7 at 23 ("Specifically, the claimant has been evaluated and treated for a traumatic brain injury with seizure activity.")). The record supports the ALJ's finding that G.A.H.'s seizures were caused by her traumatic brain injury. (*See, e.g., id.* at 231 (G.A.H. "was assaulted by father 1 month ago with subsequent intracranial bleed. Was admitted to WCHOB. Discharged 10 days ago on Keppra. Seen here 6 days ago for a possible 'petite mal' seizure and

discharged); *id.* (trauma from subdural left side hematoma thought to be the cause of G.A.H.'s seizures)). Simply because the phrasing used by the ALJ to refer to these impairments is not to Plaintiff's liking does not mean that the ALJ ignored these impairments. *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 U.S. Dist. LEXIS 133137, at *8 (W.D.N.Y. Aug. 7, 2018) ("There is no requirement that the language used by the ALJ . . . mirror the terminology used by Plaintiff's physicians, so long as the ALJ properly analyzes Plaintiff's medically determinable impairments."). The written determination contains more than a three-page discussion of G.A.H.'s history, treatment, and resolution of her traumatic brain injury with seizure disorder. (*See* Dkt. 7 at 23-26). In other words, it is abundantly clear to the Court that the ALJ adequately considered these impairments. Remand is not required on this basis

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 14, 2019
      Rochester, New York